DOWNEY BRAND LLP
JAMIE P. DREHER (Bar No. 209380)
jdreher@downeybrand.com
JOSHUA DALAVAI (Bar No. 339840)
jdalavai@downeybrand.com
621 Capitol Mall, 18th Floor
Sacramento, California 95814
Telephone:  916.444.1000
Facsimile:  916.444.2100

Attorneys for Plaintiff STARTOP SPV - LONG ANGLE INVESTMENTS LLC

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STARTOP SPV - LONG ANGLE INVESTMENTS LLC,<br><br>Plaintiff,<br><br>v.<br><br>STARTOP INVESTMENTS, LLC, a Wyoming limited liability company; ANDREW ADLER, an individual; DAVID HARDCASTLE, an individual.<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br>**1. Breach of Contract**<br>**2. Negligence**<br>**3. Fraud**<br>**4. Violation of Unfair Competition Law**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff STARTOP SPV – LONG ANGLE INVESTMENTS LLC alleges as follows:

**PARTIES**

1. Plaintiff STARTOP SPV – LONG ANGLE INVESTMENTS LLC is a Delaware limited liability company with its principal place of business located in Dallas, Texas.

2. Defendant STARTOP INVESTMENTS, LLC is a Wyoming limited liability company with its principal place of business in Sheridan, Wyoming.

3. Defendant ANDREW ADLER is a natural person residing in Connecticut.

4. Defendant DAVID HARDCASTLE is a natural person residing in Fresno County, California.

5. Plaintiff alleges, on information and belief, that at all times mentioned in this

1 Complaint each of the Defendants was the agent, servant, representative, and employee of the
2 remaining Defendants and was acting within the course and scope of such agency, service,
3 representation, and employment in performing the acts alleged herein.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over the claims asserted in this Complaint pursuant to 28 U.S.C. § 1332.

7. This Court has personal jurisdiction over all Defendants because they made multiple commercial loans, including the loan at-issue in this litigation, to a California corporation doing business in California, and the loan at-issue here was collateralized by California property. This Court additionally has personal jurisdiction over Defendant HARDCASTLE because he is a California resident.

8. Venue is proper in the Eastern District because a substantial part of the events or omissions giving rise to the claims in this Complaint occurred in or directly concerned locations in Kern County, California. Plaintiff alleges it was fraudulently induced into participating in the loan at-issue here, largely in part based upon (1) Defendants' representations regarding the borrower's businesses in Fresno and Bakersfield, and (2) the ostensible strength of the collateral, which was situated in Bakersfield, so the central allegations of this lawsuit either took place in or were directly connected to Fresno County and Kern County in California.

## GENERAL ALLEGATIONS

9. This case concerns fraud and negligence committed by Defendants in connection with a $5,000,000 commercial bridge loan ("Loan") they issued to Bitwise Industries, Inc., a California corporation ("Bitwise"). Plaintiff was invited by STARTOP to be a participant in the Loan and ultimately agreed to contribute $2,500,000 in exchange for a 50% interest therein. The Loan was secured by, among other things, deeds of trust on real property located in Bakersfield, California, and pledges of membership interests in the controlling entities for those properties, as further described below.

### A. BITWISE HISTORY AND CREATION OF NIC WISE

10. Bitwise marketed itself as a technological hub in underprivileged communities,

focused on connecting marginalized people within those communities to the broader technology industry and job market through apprenticeships and related training.

11. The co-founders and co-CEOs of Bitwise are Jake Soberal and Irma Olguin, Jr.

12. As described by STARTOP to Plaintiff, Bitwise had $139,500,000 in projected revenue for 2022. Bitwise investors at that time allegedly included JP Morgan Chase Strategic Investments Corp., Hunt Capital Partners, Goldman Sachs, and Bank of America. The company enjoyed numerous accolades including recognition and ranking in Inc. 5000's Fastest Growing Companies, Great Places to Work, Fortune, and People Magazine.

13. On the surface, Bitwise was a flourishing, innovative, and value-driven organization. This seemingly winning combination enticed investors and potential business partners alike, the latter including NICByte LLC ("NICByte"), a Texas limited liability company.

14. NICByte and a Bitwise affiliate, Wishon Row, a California limited liability company, eventually formed NIC Wise RE LLC ("NIC Wise"), a Delaware limited liability company, on June 6, 2022. The NIC Wise Operating Agreement ("Operating Agreement") states the company's purpose to be, in part, to acquire and manage real property in California.

15. Plaintiff alleges, on information and belief, that Wishon Row was managed and controlled by Bitwise, Soberal, Olguin, or some combination thereof, at all relevant times.

16. According to the Operating Agreement, NIC Byte provided 95% of the initial capitalization for NIC Wise, which plaintiff alleges on information and belief amounted to approximately $35.5 million. Wishon Row provided 5% of the initial capitalization for NIC Wise, which plaintiff alleges on information and belief ultimately amounted to about $1.9 million. Wishon Row was also tasked with management and maintenance responsibilities for the properties.

17. Soon after its inception, NIC Wise created six subsidiaries to purchase six different real properties across California. Three of those subsidiaries ("Bakersfield Subsidiaries") and their respective purchases are pertinent here: (1) 1701 8th Street Company, (2) 1715 8th Street Company, and (3) 1723 8th Street Company. Each subsidiary purchased real property in downtown Bakersfield, CA located at the address corresponding to the subsidiary name (e.g.,

"1701 8th Street Company" purchased 1701 8th Street, Bakersfield, CA 93301, and so forth). The three properties are contiguous and total 59,544 square feet of office space ("Properties").

18. Plaintiff alleges, on information and belief, that, Bitwise was running on fumes and being propped up by a series of hustles and deceits by Soberal and Olguin (and, as described herein, enabled by STARTOP, ADLER, and HARDCASTLE). For example, the Federal Bureau of Investigation found that despite raising over $70,000,000 in investment funds by the end of 2021, Bitwise had roughly $5,000,000 left by the end of 2022, and only $1,500,000 remained by summer of 2023. A Department of Justice ("DOJ") investigation revealed that the two co-CEOs routinely concealed these alarming depletions by falsifying bank statements and presenting them to the Bitwise board of directors to show much higher cash balance and revenue figures than actually existed. A Criminal Complaint was filed by the United States of America against Irma Olguin, Jr. and Jake Soberal in the Eastern District of California ("Criminal Complaint"), which details the above fraudulent practices.

19. Plaintiff alleges, on information and belief, that Soberal and Olguin constantly borrowed money to keep the company afloat. According to the Criminal Complaint, from June to September of 2022, the pair falsified bank statements and other due diligence materials, provided them to various investors, and were ultimately able to procure over $28,000,000 in investments from those investors. This is only a sampling of Soberal's and Olguin's fraudulent borrowing practices.

**B.     DEFENDANTS' RELATIONSHIP WITH BITWISE**

20. Defendants HARDCASTLE and ADLER also invested in Bitwise at various points in time. Plaintiff alleges, on information and belief, that, unlike other investors and business partners who Bitwise defrauded, ADLER and HARDCASTLE were aware of Bitwise's dire financial straits at all relevant times, and that the two privately acknowledged to each other that Soberal and Bitwise were easy targets to profit from by way of loan fees and interest due to their constant need for cash.

21. As alleged by NICByte in a verified complaint filed against Bitwise and STARTOP in Delaware (Case No. 2023-6037-NAC) ("Delaware Case"), ADLER once texted

1  HARDCASTLE that "[Soberal] always needs money. I think we'll be making fees off [Bitwise]
2  for many months to come."

3      22.    Plaintiff alleges, on information and belief, that Soberal and Olguin considered
4  HARDCASTLE and ADLER critical in perpetuating Bitwise's fraudulent regime by providing the
5  loans necessary to keep appearances of the company's stability going for as long as possible.

6      23.    Plaintiff alleges, on information and belief, that ADLER publicly represented
7  himself as a member of the Advisory Board to Bitwise.

8      24.    Plaintiff alleges, on information and belief, that HARDCASTLE and Soberal have
9  a close relationship and were in consistent contact for over a decade, beginning circa 2013.

10      25.    Plaintiff alleges, on information and belief, that in or around May 2022,
11  HARDCASTLE loaned $1,000,000 to Soberal from another of his companies, 2112 LLC. Plaintiff
12  further alleges, on information and belief, that 2112 LLC made a 10% loan fee and 2% marketing
13  fee on this transaction, totaling approximately $120,000.

14      26.    Plaintiff alleges, on information and belief, that in or around August 2022,
15  HARDCASTLE loaned another $1,000,000 to Soberal from 2112 LLC. Plaintiff further alleges,
16  on information and belief, that this loan took similar shape to the Loan at-issue in this litigation, in
17  that Soberal collateralized a NIC Wise property and membership interests in its
18  purchasing/controlling subsidiary. Plaintiff further alleges, on information and belief, that
19  HARDCASTLE made $34,500 in loan fees on this transaction.

20      27.    Plaintiff alleges, on information and belief, that in or around December 2022,
21  HARDCASTLE and ADLER loaned $750,000 to Soberal from another of their companies,
22  Voyager Pacific Capital Fund, LLC ("Voyager"). Plaintiff further alleges, on information and
23  belief, that Voyager made $25,000 in loan fees on this transaction.

24      28.    Plaintiff alleges, on information and belief, that in or around December 2022,
25  ADLER loaned $500,000 to Soberal from another of his companies, Premier Property
26  Management Group ("Premier"). Plaintiff further alleges, on information and belief, that Premier
27  made $25,000 in loan fees on this transaction.
28      ///

**C.     THE LOAN AT-ISSUE AND RELATED MISREPRESENTATIONS**

29.     In or around the first quarter of 2023, Bitwise approached STARTOP for the Loan. Plaintiff alleges, on information and belief, that STARTOP was fully aware of and ready to profit from Bitwise's precarious financial position at the time, and accordingly began raising funds to provide the Loan.

30.     Plaintiff alleges, on information and belief, that like it had done before in similar loans to Bitwise, STARTOP began seeking loan participants to offload its own risk. STARTOP invited Plaintiff to participate in the Loan by sending it a Loan Summary in the first quarter of 2023. Though Defendants conveyed they had millions of personal dollars invested, on information and belief, it turns out nearly all of the loan funds were raised from other investors.

31.     Defendants represented to Plaintiff that Bitwise would use Loan funds to improve its properties in other cities in order to replicate its ostensible success in Fresno and Bakersfield.

32.     Plaintiff alleges, on information and belief, that Defendants knew or should have known that Bitwise would not be using the funds for that purpose; HARDCASTLE texted Soberal on December 28, 2022, "Use of funds, don't worry about that. We can't tell where it's going anyway. Just for our lenders in case they ask."

33.     As alleged in the Delaware Case, ADLER also stated "without a use of funds clause we won't raise any 7 figure checks because everyone will assume [Soberal] will be using borrowed funds to pay back the high interest debt."

34.     In the Loan Summary, STARTOP represented to Plaintiff that the interest rate for the Loan was 24% per annum.

35.     ADLER also represented to Plaintiff that the interest rate for the Loan was 24% per annum in a phone call. Further, in response to a direct question of whether STARTOP was making any "spread" on the interest rate charged to participants and the interest rate charged to Bitwise, ADLER said there was not. ADLER additionally represented to Plaintiff that Bitwise was only charged 24% interest in other loans from STARTOP.

36.     Plaintiff alleges, on information and belief, that the actual interest rate as reflected on the promissory note between STARTOP and Bitwise was 60% per annum.

37.     Plaintiff alleges, on information and belief, that the Defendants forged Soberal's signature on a fabricated promissory note, which contained the false 24% per annum interest figure, and provided it to Plaintiff during the course of Plaintiff's due diligence, or using a signed document, altered the annual interest rate amount between the version provided Plaintiff and the version that was signed.

38.     Plaintiff alleges, on information and belief, that Defendants ran a similar scheme on loan participants in other loans from STARTOP to Bitwise, in that they would represent to those participants that the interest rate for the loan was 24%, when it was actually 60% per annum.

39.     The Loan Summary also claimed that STARTOP had engaged NAI Partners Valuation & Advisory services to appraise the Properties. Plaintiff alleges, on information and belief, that STARTOP never engaged that appraiser itself, and was in fact referencing a valuation report created for NICByte the year prior.

40.     On March 5, 2023 ("Effective Date"), Plaintiff and STARTOP entered into a Master Participation Agreement which delineated the terms of Plaintiff's participation in and STARTOP's duties regarding the Loan.

41.     Immediately before and directly after execution of the Master Participation Agreement, Defendants withheld material knowledge regarding Bitwise's financial condition from Plaintiff.

42.     Plaintiff alleges, on information and belief, that four days prior to the Effective Date, Soberal notified HARDCASTLE that Bitwise would not be able to timely pay interest on a separate loan from STARTOP. This constituted a default under the terms of that loan. STARTOP failed to notify Plaintiff of Bitwise's default, despite it being obviously material to Plaintiff's decision whether or not to execute the Master Participation Agreement and Defendants' representations to Plaintiff that Bitwise had never been in default. Plaintiff additionally alleges, on information and belief, that STARTOP helped Bitwise conceal its distressed financial position by paying the interest to loan participants/investors on the defaulted loan from its own account. Defendants did not notify Plaintiff of this cover-up, either.

43.     Plaintiff alleges, on information and belief, that one day after the Effective Date,

Soberal represented to HARDCASTLE that he was recently forced to cover Bitwise payroll with his own personal funds. HARDCASTLE did not ever relay this concerning news to Plaintiff, despite it being a significant indicator of Bitwise's dire straits at the time. This omission by HARDCASTLE was also glaring because the closing date for the Master Participation Agreement, March 15, 2023, had not yet passed, meaning Plaintiff still had time to back out of the deal.

44. The Master Participation Agreement also repeated STARTOP's representation that the Loan to Bitwise was made at a 24% annual interest rate.

45. Ultimately, Plaintiffs entered into the Master Partnership Agreement under the auspices of a short term financing at a high (24%), but not materially out of market, rate, to be used to expand Bitwise's real estate presence. The Loan was to be secured by property that Bitwise had authority to encumber, backed by a borrower with ample funding in the bank, that Defendants had loaned money to on a number of occasions prior that was financially strong and had never had a default. Defendants were also purportedly investing millions of their own dollars, putting their own money at risk. However, Defendants raised almost all the funds from other investors, knew of Bitwise's current loan defaults and precarious financial situation, and sought to capitalize on this distress by taking the loan fees and 36% spread on the actual loan terms compared to what it was paying investors, putting massive amount of risk on Plaintiff while simultaneously representing the Loan's safety.

## FIRST CAUSE OF ACTION

**(Breach of Contract)**

46. Plaintiff realleges and incorporates by reference each and every allegation of the above Paragraphs 1-45 of this Complaint as if set forth fully herein.

47. The Master Participation Agreement constituted a contract between the parties, effective as of March 5, 2023.

48. Plaintiff duly performed all of its obligations under the Master Participation Agreement, the primary obligation being payment of $2,500,000 to Defendants in exchange for a 50% interest in the Loan. Any alleged nonperformance by Plaintiff was excused or made impossible by Defendants' breaches hereinafter alleged.

49. Plaintiff alleges, on information and belief, that Defendants materially breached the agreement with Plaintiff by misrepresenting the true interest rate for the Loan as being 24% per annum, when it was actually 60% per annum. This misrepresentation prevented Defendants from performing their obligations to "promptly remit to [Plaintiff] their pro rata share of interest, principal, and other sums on account of, or with respect to, the Loan" and refrain from "do[ing] or perform[ing] any act or thing contrary to or different from what is provided in this Agreement and the Loan Documents"

50. Plaintiff alleges, on information and belief, that Defendants retained the 36% difference between the true and falsified interest rates for their own profit, thus damaging Plaintiff by depriving it of its pro rata share of the full interest payments from Bitwise.

51. Defendants also breached the covenant of good faith and fair dealing by falsifying the true interest rate for the Loan, thereby depriving Plaintiff of its rights to the benefits of the contract, namely its pro rata share of the interest payments from the Loan.

52. As a result of Defendants' breaches, Plaintiff has been harmed in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

**(Negligence)**

53. Plaintiff realleges and incorporates by reference each and every allegation of the above Paragraphs 1-52 of this Complaint as if set forth fully herein.

54. Plaintiff alleges, on information and belief, that Defendants had the duty to warn Plaintiff of Bitwise's insolvency both prior to and immediately following the execution of the Master Participation Agreement, based upon their intimate knowledge of the perilous financial situation of Bitwise and its principals, and the lead lender-loan participant relationship between the parties.

55. Plaintiff alleges, on information and belief, that Defendants breached their duty to warn Plaintiff of Bitwise's insolvency by not notifying Plaintiff (1) of Defendants' discovery of Bitwise's inability to stay current on interest payments on a separate loan from Defendants, which occurred four days prior to the execution of the Master Participation Agreement; (2) that

1  Defendants made a payment to investors on that separate loan from their own accounts to help
2  conceal the true distressed state of Bitwise's finances; and (3) of Defendants' discovery of the fact
3  that Soberal had recently financed Bitwise payroll with his own personal funds, which occurred
4  one day after the execution of the Master Participation Agreement, but prior to the closing date for
5  the Loan.

6  56.  Defendants failed to disclose material information regarding the borrower's
7  financial status to Plaintiff, despite having that knowledge both immediately prior to and
8  following execution of the Master Participation Agreement. Defendants' breaches accordingly
9  displayed a "want of even scant care" and/or constituted "an extreme departure from the ordinary
10 standard of conduct," thus amounting to gross negligence. (*City of Santa Barbara v. Superior
11 Court* (2007) 41 Cal.4th 747, 754.)

12 57.  Plaintiff alleges, on information and belief, that had Defendants adequately warned
13 Plaintiff of Bitwise's inability to pay other debts and their own involvement in hiding that inability
14 from investors, Plaintiff would not have entered into the Master Participation Agreement and
15 would have retained the $2,500,000 it paid to do so. Similarly, if Defendants had warned Plaintiff
16 of Bitwise's need to finance its operations with personal funds from its co-CEO, Plaintiff would
17 not have entered into the Master Participation Agreement, which was still within its rights given
18 the closing date of March 15, 2023 had not yet passed.

19 58.  Defendants' breaches were the proximate cause of Plaintiff's harm, in that the
20 consequences to Plaintiff from Defendants' failure to adequately warn Plaintiff of Bitwise's true
21 financial state were reasonably foreseeable, and Defendants' breaches were unattenuated by any
22 superseding cause.

23 59.  Plaintiff was harmed in the amount of at least $2,500,000 due to Defendants'
24 breaches, with further damages to be proven at trial.

25                          **THIRD CAUSE OF ACTION**
26                                   **(Fraud)**

27 60.  Plaintiff realleges and incorporates by reference each and every allegation of the
28 above Paragraphs 1-59 of this Complaint as if set forth fully herein.

61. Plaintiff alleges, on information and belief, that Defendants knowingly made a false representation to Plaintiff by stating that the Loan proceeds would be used by Bitwise to improve its commercial properties, when in reality, Defendants knew that Bitwise would be using the funds to pay back its other high interest loans.

62. Plaintiff alleges, on information and belief, that Defendants knowingly made false representations to Plaintiff by stating in the Loan Summary, the Master Participation Agreement, and orally that the interest rate for the Loan was 24% per annum, when it was actually 60% per annum, and that Defendants knew this representation was false because they executed the promissory note containing the 60% per annum figure with Bitwise.

63. Plaintiff alleges, on information and belief, that Defendants knowingly made a false representation to Plaintiff by forging Soberal's signature on a fabricated promissory note containing the false 24% per annum interest rate.

64. Plaintiff alleges, on information and belief, that Defendants knowingly made a false representation to Plaintiff by claiming that all loans from STARTOP to Bitwise had a 24% per annum interest rate when, in reality, each such loan had a 60% per annum interest rate.

65. Plaintiff alleges, on information and belief, that Defendants knowingly made a false representation to Plaintiff by stating that they had invested a significant amount of their own funds in the Loan and other loans to Bitwise and were correspondingly exposed to risk, when, in reality, they had invested little to none of their own funds in any loans to Bitwise and offloaded liabilities to loan participants, including Plaintiff.

66. Plaintiff alleges, on information and belief, that Defendants concealed from Plaintiff the fact of Bitwise's default under a separate loan from Defendants, which fact Defendants knew of at least four days prior to execution of the Master Participation Agreement.

67. Plaintiff alleges, on information and belief, that Defendants concealed from Plaintiff the fact that they secretly made payment, on or around March 2, 2023, on behalf of Bitwise to investors on the separate loan so that those investors would not know Bitwise was in default and potentially insolvent.

68. Plaintiff alleges, on information and belief, that Defendants concealed from

Plaintiff the fact that Soberal was personally funding Bitwise payroll, which they discovered on or around March 6, 2023.

69. Plaintiff alleges, on information and belief, that Defendants knowingly made a false representation to Plaintiff by claiming in the Loan Summary that they had engaged NAI Partners Valuation & Advisory Services to appraise the Properties, when Defendants never engaged that appraiser themselves, and were in fact referencing a valuation report created for NICByte the year prior.

70. Defendants made each of the aforementioned fraudulent statements or fraudulently concealed the aforementioned material facts with the intent to induce Plaintiff to act in reliance thereon by executing the Master Participation Agreement.

71. Plaintiff relied upon Defendants' fraudulent statements in executing the Master Participation Agreement. Plaintiff actually relied on Defendants' fraudulent statements, which were presented as due diligence regarding the Loan, and accordingly substantially influenced Plaintiff's decision to participate in the Loan. Plaintiff's reliance was justifiable because it performed its own due diligence, but the fraudulent documents provided to it were undetectably forged or altered.

72. Defendants' fraudulent statements and concealments caused Plaintiff's harm, in that had Plaintiff known the truth regarding any one of them, Plaintiff would not have executed the Master Participation Agreement. Defendants' fraud induced Plaintiff to enter into a contract under false pretenses and lacking material information, and any corresponding consequences to Plaintiff were accordingly foreseeable and unattenuated by any superseding cause.

73. As a result of Defendants' fraud, Plaintiff has been harmed in the amount of at least $2,500,000, with further damages, including but not limited to punitive damages, to be proven at trial.

## FOURTH CAUSE OF ACTION

**(Violation of Unfair Competition Law, Cal. Bus. & Prof. C. §§ 17200, et seq.)**

74. Plaintiff realleges and incorporates by reference each and every allegation of the above Paragraphs 1-73 of this Complaint as if set forth fully herein.

75. Defendants committed the following business acts in violation of, at least, Cal. Civ. Code, § 1710 [state law fraud/deceit] and/or 18 U.S.C. § 1343 [federal wire fraud]: (1) misrepresenting the use of funds for the Loan to Plaintiff, (2) concealing the true interest rate for the Loan from Plaintiff, (3) presenting a fabricated interest rate for the Loan to Plaintiff, (4) concealing material information regarding Bitwise's financial and default status from Plaintiff during its deliberation on whether or not to participate in the Loan, and (5) falsifying the extent of their personal investment in the Loan to Plaintiff.

76. As a result of Defendants' unlawful acts, Plaintiff paid $2,500,000 to enter into the Master Participation Agreement.

77. Defendants' retention of Plaintiff's $2,500,000 constitutes an ill-gotten gain because they obtained it through fraudulent inducement.

78. Plaintiff would not have entered into the Master Participation Agreement with knowledge of the true state of affairs regarding any one of Defendants' unlawful acts.

79. Plaintiff has been harmed in the amount of $2,500,000 as a result of Defendants' aforementioned unlawful acts.

## **PRAYER**

WHEREFORE, Plaintiff prays for relief as follows:

1. For compensatory damages;
2. For consequential damages;
3. For punitive damages for gross negligence and fraud;
4. For costs of suit incurred herein; and
5. For any other relief the Court may deem proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby requests a jury trial on all issues and claims so triable.

///

///

///

DATED:  March 4, 2024				DOWNEY BRAND LLP

						By: _____/s/ Jamie P. Dreher_____
						        JAMIE P. DREHER
						        JOSH DALAVAI
						Attorneys for Plaintiff STARTOP SPV - LONG
						        ANGLE INVESTMENTS LLC